Filed 7/9/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re A.C., a Person Coming Under the Juvenile Court Law. | 2d Crim. No. B292149 (Super. Ct. No. PJ52736) (Los Angeles County) |
| THE PEOPLE,<br><br>   Plaintiff and Respondent,<br><br>v.<br><br>A.C.,<br><br>   Defendant and Appellant. | |

     A.C., a ward of the juvenile court, made statements to an in-home counselor who interpreted them as threats. The juvenile court sustained a Welfare and Institutions Code section 602 petition and found that A.C. violated his conditions of probation by making criminal threats. (Pen. Code, § 422, subd. (a).)[1] A.C. appeals.

---

     [1] All statutory references are to the Penal Code unless otherwise stated.

We conclude that statements A.C. made to a counselor are admissible because they do not fall within the psychotherapist-patient privilege.  (Evid. Code, § 1014.)  We also conclude A.C.'s statements do not violate his conditions of probation.  We reverse.

FACTS

After sustaining a Welfare and Institutions Code section 602 petition, the juvenile court placed A.C. home on probation.  Probation condition 6 provided, "You must not unlawfully threaten, hit, fight with, or use physical force on any person."  Probation condition 14 provided, "You must not have, possess or act like you possess an object you know is a dangerous or deadly weapon.  You must not knowingly have or possess a replica gun."

A few months later, the People filed a notice of violation of probation, alleging, among other things, that A.C.: 1) "threatened his peers at school," 2) may be in danger of hurting himself, 3) is not on medication, and 4) has not seen a psychiatrist.  The People requested A.C. be detained pending a hearing on the violation of his probation conditions.

At the hearing, Ana Burgos, a "child and family counselor" with "Family Preservation," testified she was the "in-home counselor assigned to [A.C.'s] family."  She did not provide "one-on-one therapy sessions."  She only assessed the needs of the family and "provid[ed] linkages" so the family and A.C. could receive mental health services.

A.C.'s counsel objected, claiming Burgos's testimony was inadmissible because it would reveal A.C.'s statements that are protected by the psychotherapist-patient privilege.  The juvenile court ruled the objection was premature.  It said, "[Y]ou're required to assert the privilege every time you feel the privilege

2

has been violated.  [Y]ou need to do it at the specific point when the privilege needs to be invoked."

Burgos testified that prior to sessions with minors she advises them that their statements "will be private except if [she] hear[s] that the life of a child or anybody else is in danger."  The prosecutor asked whether any of A.C.'s statements fell within this exception.  A.C.'s counsel objected on the grounds of privilege.  The juvenile court overruled the objection.

Burgos testified that A.C. told her that he did not want to go to school.  Some students "were bullying him."  A.C. said if he went to school, "and the kids teased him, he was going to react"; he was going to "basically stab them with whatever he had available"; and he "was serious about it."  He referred to two students, but he did not give Burgos their names.  His mother was present when he made the statements.  Burgos contacted her supervisor to report A.C.'s statements.  A psychiatric emergency team was dispatched and came to the residence.  A.C. was interviewed and was eventually admitted to a hospital.

The juvenile court found A.C. violated probation conditions 6 and 14.  It said Burgos's actions in reporting A.C.'s statements "were completely appropriate."

DISCUSSION

*The Admissibility of the Statements A.C. Made to Burgos*

A.C. timely objected to Burgos's testimony.  He contends the statements made to her were confidential and inadmissible under the psychotherapist-patient privilege.  (Evid. Code, § 1014.)  The juvenile court did not err in admitting Burgos's testimony about A.C.'s statements.

"In California, as in all other states, statements made *by a patient* to a psychotherapist *during therapy* are generally treated

3

as confidential and enjoy the protection of a psychotherapist-patient privilege." (*People v. Gonzales* (2013) 56 Cal.4th 353, 371, italics added.) But "when a therapist who *is providing treatment to a patient* concludes that the patient is a danger to himself or herself or to others and that disclosure of the contents of *a therapy session* is necessary to prevent the threatened danger, the therapist is free to testify about those statements . . . ." (*Id.* at p. 380, italics added.)

"Where the psychotherapist-patient privilege is claimed as a bar to disclosure, the claimant has the initial burden of proving the preliminary facts to show the privilege applies." (*Story v. Superior Court* (2003) 109 Cal.App.4th 1007, 1014.) " 'Preliminary facts' means the existence of a psychotherapist-patient relationship" and, once established, is proof that the claimant was a patient who consulted a psychotherapist. (*Ibid.*) A patient is one who consults a psychotherapist for diagnosis or treatment. (Evid. Code, § 1011.)

The juvenile court found Burgos's statements were admissible because Burgos "was not acting as a therapist." The record supports this finding.

Burgos testified she was not A.C.'s therapist. Her meeting with A.C. was not a psychological therapy session. It was not "part of [her] duty" to "help him with coping strategies with the bullying that he felt he was getting at school." She "was *not providing one-on-one therapy sessions*." (Italics added.) She did not work for the Department of Mental Health. She was there to assist the family in obtaining "linkages" to mental health services that the family and A.C. could utilize. Burgos was assessing "the needs of the family."

4

But even if A.C.'s statements were made to a therapist, they would still be admissible. A therapist has a duty to provide a warning to others when he or she reasonably believes a patient "is dangerous to another person." (*People v. Felix* (2001) 92 Cal.App.4th 905, 911.) Burgos testified she disclosed A.C.'s statements because she felt they were a "threat towards some individuals."

A.C. contends admitting his statements violated his constitutional right to privacy. But Burgos said she provided a warning about the limits on confidentiality. Even if Burgos were a therapist, the right to privacy is not a bar to admissibility of statements where the therapist has warned the patient and reasonably believes the patient has made a threat. (*People v. Wharton* (1991) 53 Cal.3d 522, 563; *People v. Gomez* (1982) 134 Cal.App.3d 874, 881-882.)

Burgos acted reasonably in disclosing A.C.'s statements. But that, by itself, does not show A.C. violated his probation conditions. (*People v. Felix, supra*, 92 Cal.App.4th at p. 908.)

*Sufficiency of the Evidence*

We, A.C., and the People agree there is insufficient evidence to support the findings that A.C. violated his probation conditions.

A court may revoke probation if it "*has reason to believe* that the [probationer] has violated any of the conditions of . . . probation." (*People v. Rodriguez* (1990) 51 Cal.3d 437, 443.) The juvenile court found A.C. violated probation condition 6 that requires that he "must not unlawfully threaten" any person.

But to support the finding that A.C. made an unlawful threat, the People must prove: 1) he made the statements "with the specific intent [that they] be taken as a threat" (*People v.*

5

*Felix, supra*, 92 Cal.App.4th at p. 911); 2) he communicated the statements directly or by a third party to the victims; and 3) the statements caused the victims to be in a state of "sustained fear." (*Id.* at p. 912; § 422.)

In *Felix*, the defendant made statements in a therapy session that a psychotherapist believed to be threats. We held the defendant did not violate the criminal threat statute (§ 422) "even though the third party psychotherapist has a duty to warn the intended victim." (*People v. Felix, supra*, 92 Cal.App.4th at p. 908.) We said, "It must be shown that the patient intended the threatening remarks to be communicated to the victim." (*Ibid.*) " '[I]f the threatener intended the threat to be taken seriously by the victim, he must necessarily have intended it to be conveyed.' " (*Id.* at p. 913.)

Here A.C. could not intend Burgos to communicate his statements in the counselling meeting to the two students because he did not tell her their names. Neither A.C. nor Burgos told those students what A.C. said. There was no evidence to show the two students were in a state of sustained fear because they did not know about A.C.'s remarks. "The crime requires 'a threat so "unequivocal, unconditional, immediate, and specific" that it conveys to the victim an "immediate prospect of execution." ' " (*People v. Felix, supra*, 92 Cal.App.4th at p. 911.)

Moreover, " '[w]hen determining whether an alleged threat falls outside the realm of protected speech, it is important to focus on the context of the expression.' " (*People v. Felix, supra*, 92 Cal.App.4th at p. 913.) " '[M]ere angry utterances or ranting soliloquies, however violent,' " do not, by themselves, constitute criminal threats. (*Id.* at p. 914.) A.C. did not make the statements to any students; he made them to Burgos. Burgos's

6

testimony shows that A.C. said he did not want to go to school. A.C.'s statements were made to convince Burgos that he should be excused from attending school. He succeeded; he did not return to school. His statements show he may need counselling, but they do not support the finding that he violated probation condition 6 that he not threaten any person.

A.C. expressed his feelings and frustration in a private setting about being bullied. " 'One may, in private, curse one's enemies, pummel pillows, and shout revenge for real or imagined wrongs' " and be immune from criminal liability. (*People v. Felix*, *supra*, 92 Cal.App.4th at p. 913.) Burgos's and her supervisor's response to the statements show they believed a psychiatric intervention, rather than a police response, was appropriate. A psychiatric response team came and interviewed A.C. There is no evidence that Burgos ever contacted the school with a warning as would normally be expected in the case of a typical criminal threat. The evidence is insufficient to support a violation of probation condition 6.

The juvenile court also found A.C. violated probation condition 14. It provides, "You must not have, possess or act like you possess an object you know is a dangerous or deadly weapon. You must not knowingly have or possess a replica gun." The court said, "In order to stab somebody, [A.C.] would have to have an object he knows is a dangerous or deadly weapon."

A.C. told Burgos that if he were bullied, "he was going to . . . stab them with whatever he had available." Probation condition 14 prohibits the use or possession of a weapon. But A.C. did not use a knife, he did not say he had "a dangerous or deadly weapon," and there is no evidence that he possessed one. (*People v. Kim* (2011) 193 Cal.App.4th 836, 846-847 [violation of

probation conditions prohibiting possession of items requires the People to prove actual possession of the prohibited item and the defendant's knowledge of that possession].)  In addition, A.C. did not perform an "act" that simulated his possession of a weapon. The juvenile court found that A.C.'s statement about stabbing someone shows he "would have to have [a weapon]."  But this is based on speculation, not evidence of possession.  (*People v. Wright* (2016) 4 Cal.App.5th 537, 545 [substantial evidence to support a finding may not be based on speculation].)  The parties agree that A.C.'s use of language was not sufficient to show a violation of this probation condition.  The People note that, at most, A.C.'s statements "indicated a possible future event," not a present possession or actual use of a weapon.

The evidence is insufficient to support the findings that A.C. violated his probation conditions.

### DISPOSITION

The orders finding A.C. violated probation conditions 6 and 14 are reversed.

<u>CERTIFIED FOR PUBLICATION.</u>


GILBERT, P. J.

We concur:



YEGAN, J.



TANGEMAN, J.


8

Fred J. Fujioka, Judge

Superior Court County of Los Angeles

_____

Gerald Peters, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Zee Rodriguez, Paul S. Thies, Deputy Attorneys General, for Plaintiff and Respondent.