Filed 8/10/22  In re A.R. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

In re A.R., a Person Coming Under the Juvenile Court Law.

THE PEOPLE,

　　　　Plaintiff and Respondent,

v.

A.R.,

　　　　Defendant and Appellant.

E077863

(Super.Ct.No. J289755)

OPINION

APPEAL from the Superior Court of San Bernardino County. Charles J. Umeda, Judge. Reversed in part; remanded with directions.

Paul R. Krause, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Christopher P. Beesley and Warren J. Williams, Deputy Attorneys General, for Plaintiff and Respondent.

1

A.R., a minor, appeals from a disposition order setting his maximum term of confinement at five years, after the juvenile court found he committed one count of domestic violence and one count of assault by means likely to produce great bodily injury. On appeal, A.R. identifies a number of errors in his sentence.

He correctly argues the juvenile court erred by: (1) selecting the upper felony term as the maximum period of confinement for the domestic violence offense, in violation of Welfare and Institutions Code section 726, which limits the maximum period of confinement to the middle term; (2) imposing a period of confinement for the assault offense based on the incorrect determination that Penal Code section 654 does not apply in juvenile proceedings; and (3) failing to exercise its discretion on whether to punish the offenses—which are both wobblers in the case of adults—as felonies or misdemeanors. Because these errors require a new determination of A.R.'s maximum period of confinement, we reverse the appealed order and remand the case for a new disposition hearing. In addition, as a result of recently enacted Assembly Bill No. 177 (Assem. Bill No. 177 (2021-2022 Reg. Sess.), ch. 257, §§ 1-48) (A.B. No. 177), we vacate the remaining balance of the administrative collections fee imposed on the restitution fine. (Welf. & Inst. Code, §§ 730.6, 730.7).[1]

---

[1] Unlabeled statutory citations refer to the Welfare and Institutions Code.

# I

## FACTS

In July 2021, the San Bernardino County District Attorney's Office filed an amended wardship petition alleging three counts against 15-year-old A.R.—domestic violence (Pen. Code, § 273.5, subd. (a)), assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1)), and assault by means likely to produce great bodily injury (Pen. Code, § 245, subd. (a)(4)). The petition alleged all three counts were felonies.

The incident occurred on April 4, 2021. A.R. and his girlfriend, who had been dating for about a year, got into an argument at the girlfriend's mother's house. A.R. left, but returned later to retrieve his belongings, which the girlfriend had set out on the porch. Against the girlfriend's wishes, A.R. came back inside the house, and their argument escalated.

The girlfriend testified that A.R. began punching her in the face and arms, and when she fell to the floor, he bit her and kicked her in the stomach. She noticed a knife nearby, grabbed the blade, and was cut when A.R. flung it across the room. Then A.R. pinned her against the wall and choked her with one hand for five to 10 seconds before fleeing to a neighbor's house. As soon as he was gone, she called her sister, who called the police and told them to send an ambulance. Before the police arrived, A.R. came back and threw a rock at her window.

A.R. told a different version of the incident. He said his girlfriend picked a fight with him while he was watching T.V. and started throwing his belongings in the front yard. He took the discarded items to a neighbor's house and, when he came back to collect more of his things, she came at him with a knife. He grabbed her wrist, then punched her several times but did not choke her.

A.R. said he had a scar on his chest from when she had previously stabbed him. A.R.'s sister testified that the girlfriend was often the aggressor in fights with her brother. She said she saw the girlfriend wield a knife at A.R. on multiple occasions and had been present the time she stabbed him.

On July 29, 2021, San Bernardino County Superior Court Judge Denise Trager Dvorak found A.R. had committed one count of domestic violence and one count of assault by means likely to produce great bodily injury. However, she found the assault with a deadly weapon allegation not true, because, by the girlfriend's own testimony, A.R. did not attack her with the knife—she was injured when he threw it out of reach. In making her findings, the judge observed: "[C]learly this was a toxic relationship. This was something that was not good for either one of them. And the hope is that somewhere down the road they learn to appropriately deal with relationships, anger, and make better choices." She rejected A.R.'s claim of self-defense, informing him that being hit by someone does not give one license to attack that person. She told A.R. he had gone "overboard" in his reaction and used unnecessary force, hitting his girlfriend "multiple times" and causing bruising.

4

The judge declared the injury and assault offenses "would have been a felony if committed by an adult," adjudged A.R. a ward of the court under section 602, and set his disposition hearing. After A.R. waived his right to have his disposition hearing before Judge Dvorak, the hearing took place on August 16, 2021 before San Bernardino County Superior Court Judge Charles Umeda.

A.R.'s counsel argued for the least restrictive environment of at-home probation, whereas the probation officer and the prosecution recommended placement. The probation officer testified that, in his opinion, A.R. required and would benefit from the structure of placement. By A.R.'s own admission, he had been living outside his mother's home for the last four years (since he was 11 years old), doing drugs and running scams to make money. And, although he liked school, he wasn't going because he feared repercussions due to his association with a local gang. A.R.'s mother testified that she was unable to keep him from doing drugs or associating with gang members and that she did not want him placed in her home. She also said she spoke with A.R.'s adult relatives and none were open to placement.

Judge Umeda concluded A.R. required out-of-home placement based on "the seriousness of the offense" and the fact his mother had a history of being unable to supervise him. The judge imposed a maximum period of confinement of four years (the upper felony term) for the domestic violence count. He imposed a period of confinement of one year (one third the middle felony term) for the assault, but stayed the sentence

5

under Penal Code section 654 after finding the offense arose from the same occurrence as the domestic violence offense.

Two days later, the judge held a hearing to revisit the sentence for the assault count and concluded Penal Code section 654 "is not considered" in juvenile proceedings unless the count is "an alternative count." As a result, he imposed a consecutive one-year confinement term for the assault, making the maximum period of physical confinement five years. A.R. filed a timely appeal.

## II

## ANALYSIS

A.    *Maximum Period of Confinement*

A.R. argues, and the People correctly concede, that the judge erred by setting the maximum period of confinement for the domestic violence offense too high. Welfare and Institutions Code section 726, subdivision (d)(1) provides that a minor found to be a ward of the court under Welfare and Institutions Code section 602 "may not be held in physical confinement for a period *in excess of the middle term* of imprisonment which could be imposed upon an adult convicted of the offense." (Italics added.) For felony domestic violence, the sentencing triad is 2, 3, and 4 years. (Pen. Code, § 273.5, subd. (a).) Thus, under Welfare and Institutions Code section 726, the judge cannot set A.R.'s maximum period of confinement any higher than three years.

6

Next, A.R. argues, and the People again correctly concede, that the judge erred by concluding Penal Code section 654 does not apply in juvenile proceedings unless the relevant count was charged in the alternative. In juvenile proceedings, Penal Code section 654 applies whenever "the court elects to aggregate the period of physical confinement on multiple counts." (Welf. & Inst. Code, § 726, subd. (d)(3).) Specifically, section 726 provides that when aggregating terms for multiple offenses, "the 'maximum term of imprisonment' shall be the aggregate term of imprisonment specified in subdivision (a) of Section 1170.1 of the Penal Code." (*Id.*, § 726, subd. (d)(3).) In turn, Penal Code section 1170.1, which governs aggregate sentencing, explicitly states that it is "subject to [Penal Code] Section 654." (Pen. Code, § 1170.1, subd. (a).)

Thus, the only circumstance where Penal Code section 654 would not apply in a juvenile proceeding is when the court elects to run the sentences concurrently and the length of the minor's term of confinement is not increased by the fact of multiple sentences. (E.g., *In re Billy M.* (1983) 139 Cal.App.3d 973, 979; *In re Samuel B.* (1986) 184 Cal.App.3d 1100, 1105; *In re Asean D.* (1993) 14 Cal.App.4th 467, 475.) Because the judge elected to run the terms for both of A.R.'s offenses consecutively, and because he previously found the offenses arose from the same occurrence, Penal Code section 654 does apply. On remand, the judge should stay the term for the assault.

B. *Sentencing Discretion on Wobblers*

A.R. argues that both judges who presided over his case failed to exercise their discretion regarding whether to punish his wobbler offenses as felonies or misdemeanors. We agree.

Section 702 provides that when a minor "is found to have committed an offense which would in the case of an adult be punishable alternatively as a felony or a misdemeanor, the court shall declare the offense to be a misdemeanor or felony." To effectuate compliance with this rule, California Rules of Court, rule 5.975(a) requires that "[i]f any offense may be found to be either a felony or a misdemeanor, the court must consider which description applies and *expressly declare on the record that it has made such consideration* and must state its determination as to whether the offense is a misdemeanor or a felony." As our Supreme Court explained in *In re Manzy W.* (1997) 14 Cal.4th 1199 (*Manzy*), the purpose behind this rule "is not solely administrative," rather, "the requirement that the juvenile court declare whether a so-called 'wobbler' offense was a misdemeanor or felony also serves the purpose of ensuring that the juvenile court *is aware of,* and actually exercises, its discretion under Welfare and Institutions Code section 702." (*Id.* at p. 1207, italics added.)

The facts of *Manzy* are instructive. There, the juvenile judge imposed a felony term for the offense but made no comment indicating he was aware the offense was a wobbler and could be punished as a misdemeanor. (*Manzy*, *supra*, 14 Cal.4th at p. 1210.) Additionally, the prosecution charged the offense as a felony and the probation

8

department consistently referred to the offense throughout the disposition report as a felony. Based on these facts, our Supreme Court concluded the judge had not fulfilled section 702's mandate. (*Ibid.*) "Under these circumstances, . . . it would be mere speculation to conclude that the juvenile court was actually aware of its discretion in sentencing Manzy. Although the juvenile court stated that it had considered, and rejected, 'lesser alternative *placements*,' it did not at any time indicate that it actually considered a lesser alternative term of *confinement*, based on whether the possession offense would, in the case of an adult, be a misdemeanor, as opposed to a felony." (*Ibid.*, italics added.)

Our circumstances are similar. Though Judge Umeda imposed felony terms for the offenses, neither he nor Judge Dvorak indicated they were aware the offenses were wobblers and, as such, could be punished as misdemeanors. Nor did the fact the offenses were wobblers ever come up during proceedings—the prosecution charged the offenses as felonies and the disposition report referred to the offenses as felonies and recommended felony-length confinement.

The People argue Judge Dvorak exercised her discretion to treat the offenses as felonies at the jurisdiction hearing, when, after finding true the allegations of domestic violence and assault by means likely to produce great bodily injury, she stated, "I find these offenses would have been a felony if committed by an adult." But as A.R. correctly points out, stating the offenses are felonies is not the same as recognizing their status as wobblers. The statement neither recognizes the offenses are wobblers nor complies with California Rules of Court, rule 5.975's requirement that a court "expressly declare on the

9

record that it has made [the] consideration" of whether to treat a wobbler as a misdemeanor. In short, the statement doesn't shed light on the "key issue," of "whether the record as a whole establishes that the juvenile court was aware of its discretion to *treat the offense as a misdemeanor* and to state a misdemeanor-length confinement limit." (*Manzy*, *supra*, 14 Cal.4th at p. 1209, italics added.)

And, because we are remanding this case for sentencing on separate issues in any event, we think the most prudent course is to direct the sentencing judge to exercise their discretion on how to punish the wobbler offenses and explain their decision for the record. Assuming the judge decides to punish at least one of the offenses as a felony, A.R.'s maximum period of physical confinement will be three years (the middle term for both offenses). (Welf. & Inst. Code, § 726, subd. (d); Pen. Code, §§ 273.5, subd. (a), 245, subd. (a)(4).) If, however, the judge decides to treat both offenses as misdemeanors, the maximum period of physical confinement will be one year. (Welf. & Inst. Code, § 726, subd. (d); *Manzy*, *supra*, 14 Cal.4th at p. 1210.)

C.    *Administrative Collections Fee*

At the disposition hearing, the judge imposed a $100 victim restitution fine (Welf. & Inst. Code, §§ 730.6, 730.7) plus a 10 percent administrative collections fee (Pen. Code, § 1203.1, subd. (d)). At the time, the fee was lawful under Penal Code section 1203.1, which authorized an administrative collections fee of up to 15 percent of the restitution fine. (Former Pen. Code, § 1203.1, subd. (*l*).)

10

However, A.B. No. 177 became effective in January 2022, while this appeal was pending, and repealed the trial courts' authority to impose various fees, including the administrative collections fee in Penal Code section 1203.1. (Pen. Code, § 1203.1, as amended by Stats. 2022, ch. 257, §§ 21, 22.) The new law also repealed the authority to *collect* the remaining balance of any of the fees it made unlawful. (Pen. Code, § 1465.9, subd. (b).)[2] The parties argue the collection provision applies to A.R.'s sentence, and we agree. We therefore vacate the balance remaining on the administrative collections fee.

D.  *Probation Term*

Lastly, A.R. argues his probation condition that says he cannot possess any weapons or "act like" he does is unconstitutionally vague because it doesn't provide fair notice of what conduct is prohibited and it restricts more conduct than necessary. We disagree.

A judge has "wide discretion" to select appropriate probation conditions and may impose "any reasonable condition that is fitting and proper to the end that justice may be done and the reformation and rehabilitation of the ward enhanced." (*In re Sheena K.* (2007) 40 Cal.4th 875, 889 [cleaned up].) Faced with a challenge of unconstitutional vagueness, we independently review the probation condition to determine whether its terms are "sufficiently precise," that is, whether they "have a 'plain commonsense

_____

[2] Specifically, A.B. No. 177 amended Penal Code section 1465.9, subdivision (b) to state: "On and after January 1, 2022, the balance of any court-imposed costs pursuant to Section 1001.15, 1001.16, 1001.90, 1202.4, 1203.1, 1203.1ab, 1203.1c, 1203.1m, 1203.4a, 1203.9, 1205, 1214.5, 2085.5, 2085.6, or 2085.7, as those sections read on December 31, 2021, shall be unenforceable and uncollectible and any portion of a judgment imposing those costs shall be vacated."

11

meaning, which is well settled.'" (*In re R.P.* (2009) 176 Cal.App.4th 562, 566.) Thus, to withstand a vagueness challenge, "a probation condition 'must be sufficiently precise for the probationer to know what is required of him, and for the court to determine whether the condition has been violated.'" (*Ibid.*)

A.R. argues the condition is vague because it could apply to "a virtually inexhaustible number of subjectively defined objects, behaviors, and situations." To the contrary, we think the condition can be easily understood in commonsense terms to apply when an innocuous object is used to imitate a weapon. As the court explained in *In re A.C.* (2019) 37 Cal.App.5th 262, the condition means that A.R. must not "perform an 'act' that simulate[s] his possession of a weapon." (*Id.* at p. 269.) So, for example, though a banana is not a gun, A.R. could handle one in a way that simulates a gun by putting it in his pocket and pressing it against someone the same way you would with a butt of a handgun. That would violate the condition, whereas eating a banana in front of someone would not. Or, though a water or laser tag gun is not a real weapon, A.R. would violate the condition if he pointed one at someone outside the setting of a game. The key is how A.R. uses the object, and we think a person of common intelligence understands what it means to use an object as if it were a weapon.

## III

## DISPOSITION

We reverse the disposition order and remand to the juvenile court to recalculate A.R.'s maximum period of physical confinement in a manner consistent with this opinion. We also vacate the balance remaining on the administrative collections fee.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

SLOUGH _____
                                    J.

We concur:

McKINSTER _____
        Acting P. J.

MENETREZ _____
                J.

13